# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40775

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2019

Lyle W. Cayce
Clerk

BRANDON L. TATUM,

Plaintiff–Appellant,

versus

SOUTHERN COMPANY SERVICES, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, WIENER, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Southern Company Services, Inc. ("SCS"), fired Brandon Tatum, and he sued. The district court dismissed, on summary judgment, his claims of interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"). On Tatum's appeal, we agree and affirm.

No. 18-40775

I.

In 2011, SCS hired Tatum as an operations technician at its biomass power generation facility. Per the FMLA, SCS provided eligible employees with job-protected leave for certain medical reasons. Tatum took extended leave to undergo gallbladder surgery in 2012 and to participate in drug rehabilitation in 2015. Yet he experienced no criticism or disciplinary action for his medical absence. Instead, he was recognized as a "valuable" employee with "strong technical expertise" and "knowledge . . . in power generation." SCS promoted him in 2013 and 2016.

Unfortunately, however, Tatum struggled to interact with his colleagues and supervisors in a professional manner. His 2013 year-end review noted that his performance "[n]eed[ed] [i]mprovement" and that he "could benefit by knowing his audience a little better." His 2015 evaluation likewise gave him a performance rating of "Needs Improvement." Specifically, it found that Tatum "use[d] . . . profanity on multiple occasions," and it again advised him to "be aware of his audience and the language he chooses to use."

Despite years of training and counseling, Tatum continued the same inappropriate behavior. In November 2016, he repeatedly interrupted a safety meeting and received a disciplinary warning.[1] Although he agreed to "[i]dentify and resolve [the] issues that led" to the infraction, Tatum subsequently shared at an employee meeting the Bible story in which Jesus said, "He that is without sin among you, let him first cast a stone." *John* 8:7. On January 20, 2017, Tatum made a sarcastic remark over the plantwide radio to a coworker, who reported the incident to the immediate supervisor, Nicole Jackson.

---

[1] Although SCS "employs a progressive approach to discipline, each step need NOT be utilized." The discipline meted out "depends on the severity or surrounding circumstances of the infraction," and "[e]mployees may be terminated at any time for serious infractions, including . . . insubordination . . . or violations of company policies."

2

No. 18-40775

Plant manager Ron Ray met with Tatum later that morning to address Tatum's recent conduct, including Tatum's insistence that certain pipe welds had been improperly tested. Ray reminded Tatum "that the problem was not with Tatum's concerns for safety, but with his approach" in confronting his colleagues. Instead of apologizing, Tatum doubled down in defending his conduct. Promising to "do whatever was necessary to get [Tatum's] attention" and to "maintain him as an employee," Ray warned Tatum that he would be terminated if he had another confrontation with a coworker. After the meeting, Ray contacted human resources to discuss escalating Tatum's discipline level.

Meanwhile, Tatum attended a doctor's appointment, where he admitted that he was "very apprehensive" about "recent issues that could terminate his employment." Finding Tatum's blood pressure to be dangerously high, his health care provider prescribed medication, instructed him to cease work immediately until Tatum's blood pressure reached a normal range, and issued a doctor's release from work. Tatum conveyed his doctor's instructions to Jackson, who gave him permission to return home and forwarded the requisite FMLA paperwork to his residence.

Later that evening, Tatum texted Jackson to inform her that, on or around December 17, 2016, he and coworker Mark Finn had observed a potentially fatal safety risk created by coworker Wayne Goodman. Tatum included three photographs taken while the work was still in progress. On January 23, 2017, Finn reported that Tatum had boasted of taking the photographs as "[j]ob security." Jackson admonished Finn for not relaying Tatum's comments earlier, and Jackson counseled Goodman on how to avoid such work-related risks.

On February 1, 2017, Tatum received an email from human resources, informing him that he was eligible for FMLA leave. The next day, SCS fired him for failure to reform his behavior and to report the safety concern timely.

3

No. 18-40775

II.

Tatum sued, alleging, *inter alia*, that SCS had interfered with his right to protected leave under the FMLA and had retaliated against him for taking such leave. In his motion for partial summary judgment, Tatum conceded that he was not actually covered by the FMLA.[2] But he contended that SCS was equitably estopped from asserting a non-coverage defense and that he was entitled to judgment as a matter of law on his interference claim.

SCS likewise sought summary judgment. It posited that because Tatum had failed to establish reasonable and detrimental reliance on a definite representation of FMLA eligibility, SCS was not equitably estopped from raising a non-coverage defense. *See Minard*, 447 F.3d at 359. Furthermore, even if Tatum could make a *prima facie* case of interference or retaliation under the FMLA, SCS maintained it had fired him for a legitimate, non-discriminatory reason. In response, Tatum submitted an affidavit in which he averred—for the first time—that had he known he was ineligible for FMLA protection, he would not have taken medical leave or would have returned to work sooner.

The district court denied Tatum's motion and granted summary judgment for SCS. Noting that Tatum had filed the affidavit "only after [SCS had] underscored the lack of evidence showing his detrimental reliance," the court disregarded portions of the declaration as conclusional, unsubstantiated, and otherwise a sham. The court saw no triable issue as to whether Tatum had reasonably and detrimentally relied on SCS's representation of FMLA eligibility. Even accepting Tatum's "self-serving" statements of reliance, the court held that he had failed to show any resulting detriment because he had been

---

[2] Tatum was not covered because he had worked at a site at which, or within seventy-five miles of which, fewer than fifty workers were employed. *See* 29 U.S.C. § 2611(2)(B); *see also Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 353 (5th Cir. 2006).

4

No. 18-40775

discharged for a nondiscriminatory reason unrelated to his request for FMLA leave. The court therefore dismissed his FMLA claims, finding that SCS was not equitably estopped from asserting a non-coverage defense. Tatum appeals.

III.

The FMLA grants "an eligible employee" up to twelve weeks of annual unpaid leave for "a serious health condition" that prevents him from performing the functions of his job. *See* 29 U.S.C. § 2612(a)(1)(D). An employer may not interfere with the exercise of any right provided under the Act, nor may it "discharge . . . any individual for opposing any practice made unlawful by" the Act. *Id.* § 2615(a). To make a *prima facie* case of interference, a plaintiff must demonstrate that "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). And a *prima facie* case of retaliatory discharge requires that an employee show "(1) [he] engaged in a protected activity, (2) the employer discharged [him], and (3) there is a causal link between the protected activity and the discharge." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

In the absence of direct evidence of discriminatory intent, we apply the *McDonnell Douglas* framework to determine the reason for an employee's discharge. *See Caldwell*, 850 F.3d at 245; *Richardson*, 434 F.3d at 332. Once an employee propounds a *prima facie* case of interference or retaliation, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action."[3] Thereafter, "the burden shifts

---

[3] *Richardson*, 434 F.3d at 332; *see also* 29 C.F.R. § 825.216(a) ("An employer must be

back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Richardson*, 434 F.3d at 332–33.

Tatum avers that the district court erred in holding that SCS was not equitably estopped from asserting a non-coverage defense. Assuming, *arguendo*, that equitable estoppel applies and that Tatum can establish a *prima facie* case of interference or retaliation, summary judgment is still warranted because SCS articulated a legitimate reason for his discharge.[4] After years of counseling and coaching by his supervisors, Tatum continued to behave inappropriately toward his managers and coworkers. In the two months preceding his termination, he repeatedly interrupted a company meeting and made a sarcastic comment over the plantwide radio to a coworker. What's more, he delayed reporting a potentially fatal safety risk for over a month.

The burden thus shifts back to Tatum to raise a genuine dispute of material fact regarding pretext. *See Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 683 (5th Cir. 2013). He fails to carry that burden. Citing *Arban v. West Publishing Corp.*, 345 F.3d 390, 402 (6th Cir. 2003), he first contends that SCS's explanation is disingenuous because the company was well aware of his alleged interpersonal problems but did not decide to fire him until after he took medical leave. According to Tatum, the fact that SCS promoted him in 2013 and 2016 indicates that his performance was satisfactory.[5] Additionally, Ray

---

able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.").

[4] "Summary judgment must be affirmed if it is sustainable on any legal ground in the record" even if the rationale was "rejected or not stated by the district court." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 537–38 (5th Cir. 2003).

[5] *See Caldwell*, 850 F.3d at 244 (noting that a pay raise made at a time when an employee's "performance was apparently lacking" suggests that "her supervisors were satisfied with her work").

committed to "do whatever was necessary to get [Tatum's] attention" and warned that he would be terminated if he had another confrontation. Yet Tatum posits that once he requested medical leave, his manager "d[id] an about face" and fired him even though he never had another such conflict.

Tatum's reliance on *Arban* is misplaced. In *Arban*, a company averred that it had decided to fire an employee before he took medical leave but had postponed doing so until after the holidays. *Id.* at 401. At trial, however, the employee showed that, before his leave, his employer was "very satisfied" with his performance and told him that he "'me[t] expectations' in all areas." *Id.* at 402. Consequently, the Sixth Circuit held that the timing of the employer's decision "could lead a fact finder to infer that the employee would not have been fired absent h[is] taking of leave." *Id.* (quoting *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001)).

In contrast, SCS made it clear to Tatum, over the years, that his conduct was unacceptable. His year-end reviews in 2013 and 2015 unequivocally stated that his performance "[n]eed[ed] [i]mprovement" and reminded him to "be aware of his audience and the language he chooses to use." Before Tatum ever sought FMLA leave, Ray had already issued him a disciplinary warning and had later contemplated escalating it. When Tatum refused to correct his behavior, SCS unsurprisingly fired him, especially after learning that he had failed to disclose a safety concern in a timely manner.

This case is thus akin to *Mauder v. Metropolitan Transit Authority of Harris County*, 446 F.3d 574 (5th Cir. 2006). There, we found no evidence of retaliation where an employee had "received a handful of reprimands . . . regarding his attitude and availability" and had been terminated "[w]hen his performance and attitude did not improve." *Id.* at 584–85. In much the same

way, Tatum's "termination should not and did not take him by surprise."[6] Indeed, before requesting FMLA leave, Tatum acknowledged to his doctor that "recent issues . . . could terminate his employment."

Tatum next invokes *Caldwell* in claiming that SCS denied him the same opportunities afforded to other employees. In *Caldwell*, 850 F.3d at 244, the employers "had a practice of consulting with employees who were performing their jobs inadequately" but refused to apply that policy evenhandedly to the plaintiff. We concluded that such "disparate treatment" created "a material question of fact as to pretext," *id.*, especially because the employers' explanation for discharging the plaintiff "ha[d] transformed over time," *id.* at 242. Tatum insists that he followed protocol in waiting to verify that a safety violation had occurred before reporting Goodman's workmanship a month later on January 20. But whereas Goodman and Finn—who also witnessed the incident—merely received coaching, Tatum was summarily discharged. He urges that such differential treatment is therefore evidence of pretext.

Even accepting that Tatum was well-intentioned in waiting to disclose the safety concern, SCS had ample cause to terminate him. "For the purposes of an FMLA claim, what matters is not whether [an employer] was objectively correct about [an employee's] dishonesty, but whether it had a good-faith belief that dishonesty existed, and that such belief was the basis for the termination." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 492 (5th Cir. 2018). SCS had a good-faith reason for firing Tatum, given Finn's account that Tatum had held onto photographs of the potential safety violation as "[j]ob security." Moreover, though SCS discharged only Tatum, neither Goodman nor Finn had a comparable record of unprofessional conduct in the workplace. In fact, Jackson

---

[6] *Mauder*, 446 F.3d at 585; *see also Richardson*, 434 F.3d at 336 (observing no evidence of retaliation where an employee was fired for his "long history of attendance problems").

testified that Tatum was the only employee she supervised who exhibited such behavior. And unlike the employer's rationale in *Caldwell*, SCS's explanation for terminating Tatum has not changed: The decision was based on his failure to "improve the manner in which he dealt with people" and "to timely report . . . a potential safety concern."

Lastly, Tatum chides SCS for denying him a chance to explain why he delayed reporting the safety risk. He declaims that SCS unfairly suspected him of wrongdoing and terminated him without hearing his side of the story. Although "[a]n employer's failure to follow its own policies may be probative of discriminatory intent," *Richardson*, 434 F.3d at 336, Tatum has not pointed to any company policy guaranteeing an employee the right to be heard before termination. And he does not allege—nor can he—that he enjoyed a cognizable property interest in continued employment. To the contrary, SCS's discipline policy provides that "[e]mployees may be terminated at any time for serious infractions, including . . . insubordination . . . or violations of company policies." SCS therefore adhered to company policy in firing Tatum after he had refused to conduct himself professionally and had delayed reporting the safety concern.

For these reasons, the district court thus appropriately dismissed Tatum's claims on summary judgment.

AFFIRMED.