# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 19, 2020

Lyle W. Cayce
Clerk

No. 19-20878

John Park,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Direct Energy GP, L.L.C.,

*Defendant—Appellee/Cross-Appellant*.

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-3503

Before Smith, Clement, and Oldham, *Circuit Judges*.
Per Curiam:[*]

John Park sued his former employer, Direct Energy GP, L.L.C., for violations of the Family and Medical Leave Act. In turn, Direct Energy countersued Park for unpaid air-conditioning services. The district court granted summary judgment for both parties and dismissed all claims. Park and Direct Energy appealed. For the following reasons, we affirm the grant

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-20878

of summary judgment on Park's claims, but we vacate the grant of summary judgment on Direct Energy's counterclaim and remand for the district court to dismiss that claim for lack of subject-matter jurisdiction.

I.

Direct Energy is a retail provider of electricity, natural gas, and energy-related services. In October 2016, Direct Energy hired Park as a financial director. In this role, Park supplied financial analysis and planning support for three business units. He reported to Julie Streich until September 2017, when Dana Mason took over as his supervisor.

Mason was never satisfied with Park's job performance. Just before Park received his year-end review in December 2017, Mason told Streich that he would have given Park an unsatisfactory rating of "does not meet[]" expectations if Park's review were based only on the three months that Mason had supervised him. Indeed, in those three months, Mason chided Park many times for issues with his work. But Mason wanted to give Park the benefit of the doubt, so he gave Park a rating of "achieves" expectations for the year. Mason made it clear, though, that Park's performance needed to improve.

At a holiday dinner in late 2017, Park announced to some of his coworkers that his wife was pregnant with the couple's third child. Park hadn't thought about taking any time off to bond with the child at this point. About a month later, Park mentioned to Mason that he "might" take some time off after the baby is born, but he wasn't sure of the anticipated timing or duration.

On January 30, 2018, Park asked Angie Moore, a human-resources employee, about Direct Energy's leave policies. Moore told him that employees are eligible for up to twelve weeks of unpaid leave under the Family and Medical Leave Act ("FMLA"), and she passed his inquiry along

to Charlotte Strachan, another human-resources employee. Strachan sent Park an e-mail later that day. She confirmed that Park may be eligible for unpaid FMLA leave and told him that he may be eligible for leave under Direct Energy's parental leave policy as well. Strachan gave Park copies of Direct Energy's FMLA and parental leave policies and told him to contact MetLife, the company's third-party benefits administrator, for more details on eligibility and the application process.

Park said the word "unpaid" was a "deal killer" for him, so he didn't pay much attention to the FMLA and parental leave policies. To be sure, FMLA leave is unpaid, but the parental leave offered by Direct Energy is not. Had Park paid closer attention to the parental leave policy that Strachan gave him, he would have seen that employees on parental leave receive 80% of their regular salaries. Park didn't ask Strachan or Moore any follow-up questions about Direct Energy's leave policies. Because he thought he wouldn't get a paycheck, he "moved on."

Meanwhile, Mason didn't see any improvement in Park's performance after his year-end review. So he met with Park again on February 12, 2018, to remind Park that he needed to improve. A couple days later, Mason discussed his concerns about Park with Angela Wilson, a senior human-resources advisor. As Mason later explained, he thought he would likely fire Park, and he needed approval from human resources before doing so.

Park's baby came sooner than expected. His wife gave birth to their son by caesarean section on February 22, 2018. Park left work when he heard the news and took the next couple weeks off. A few days after the birth, Park had lunch with a colleague, Charlie Benore, who mentioned that he had taken three months' leave at 80% pay when his child was born. This surprised Park, because he thought FMLA and parental leave were unpaid. Once Park

realized that he could request FMLA leave concurrently with parental leave and receive 80% of his salary for up to twelve weeks, he decided that's what he wanted to do.

On February 28, while Mason was working late, he received a message from Park. Park told Mason that he was working on a slideshow for an upcoming meeting. After they discussed the upcoming meeting, Park said, "I should probably plan to be there." Mason told Park that wouldn't be necessary: "stay out till next week thats [sic] fine." Park suggested instead that he come in the next week and "take the following [week] off." Park then brought up his conversation with Benore: "u know charlie tells me that he took 3 months off? u can do that?" "I wouldn't advise that," Mason responded, "taking 3 months." Park replied with a smiley face symbol followed by "some people get 10 weeks vacation too lol."

According to Mason, he initially though Park was talking about taking three months of paid vacation time—it was late at night after a long workday, Mason wasn't familiar with Benore's leave request, and Direct Energy has a flexible, self-managed vacation policy. Upon further reflection, however, Mason realized Park might have been asking about taking leave. So he e-mailed Park the next morning: "The 3 month leave you were referring to is at 80% pay for bereavement. I can confirm if you're interested." Mason testified that he mistakenly used the word "bereavement," but he thought the spirit of his e-mail was clear—he was asking if Park wanted him to look into options for taking leave. Park found the mention of bereavement "odd," but he didn't follow up with Mason about taking leave.

Mason continued to discuss Park's poor job performance with human resources. He met with Wilson again on March 8, 2018, to talk about the "next steps." And that following week, Mason met with Wilson and two others, Martine Savage and Jonathan Phillips. He explained to them that he

counseled Park about his performance during Park's 2017 review and reiterated those concerns with Park in February 2018. The next day, Mason gave Wilson, Savage, and Phillips copies of e-mails proving that he made Park aware of his poor performance on multiple occasions. After reviewing that information, Wilson, Savage, and Phillips approved Mason's decision to fire Park.

Park returned to work on March 12, 2018. Just four days later, however, he got into a wreck with an eighteen-wheeler. Park texted Mason to tell him about the accident, and spent the following week recuperating at home. Park returned to work on March 26.

On March 28, 2018, Park called MetLife for the first time to request FMLA leave. One week later, on April 5, Mason informed Park that he would be terminated, effective June 1, because his performance hadn't improved. That night, Park called MetLife to check the status of his leave request. He asked whether he could take the twelve weeks of leave intermittently and, if so, whether that would give him job protection for a full year. The next day, a MetLife representative confirmed that Park could take FMLA child-bonding leave intermittently. MetLife formally approved Park's request for twelve weeks of intermittent FMLA child-bonding leave on April 19, 2018. But Park didn't notify any of his managers about that approval or take any FMLA leave before his last day at Direct Energy.

A few months later, Park sued Direct Energy for FMLA violations. He claimed that Direct Energy interfered with his attempts to take FMLA leave and then fired him in retaliation. In response, Direct Energy filed a counterclaim for breach of contract, seeking $7,600 for unpaid air-conditioning services provided to Park. Following discovery, Park and Direct Energy filed cross-motions for summary judgment. The district court

granted the motions and dismissed both parties' claims. Park and Direct Energy appealed.

## II.

We review a district court's grant of summary judgment de novo. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper when there's "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). We construe all facts and inferences in the light most favorable to the nonmovant, but the nonmovant can't defeat summary judgment with conclusory allegations, unsupported assertions, or only a scintilla of evidence. *Id.*

## III.

The FMLA has two distinct types of provisions: prescriptive and proscriptive. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 834 (5th Cir. 2020). The prescriptive provisions "create a series of entitlements or substantive rights." *Id.* (quoting *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681 (5th Cir. 2013)). Under the FMLA, eligible employees are entitled to twelve weeks of unpaid leave in a twelve-month period for certain qualifying reasons, such as to care for a newborn child. 29 U.S.C. § 2612(a)(1)(A). An employer may not interfere with the exercise of any right provided under the FMLA. *Id.* § 2615(a)(1). The proscriptive provisions, on the other hand, protect employees from discrimination or retaliation for exercising or trying to exercise their FMLA rights. *Amedee*, 953 F.3d at 834; *see also* 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c).

At times, we've described claims brought under § 2615(a)(1) for violations of the prescriptive provisions as "interference" claims and those brought under § 2615(a)(2) for violations of the proscriptive provisions as "retaliation" claims. *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781

No. 19-20878

F.3d 764, 768 (5th Cir. 2015) (citing *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 n.2 (5th Cir. 2013) (Elrod, J., concurring) (collecting cases)). Park adopts the interference and retaliation labels and asserts both types of claims.

## A.

We begin with Park's interference claims. An FMLA interference claim requires proof that the employer "interfered with, restrained, or denied" the plaintiff's exercise or attempt to exercise his FMLA rights and that the violation prejudiced him. *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (citation omitted). To make a prima facie case of interference, a plaintiff must show that (1) he was an eligible employee, (2) his employer was subject to the FMLA, (3) he was entitled to FMLA leave, (4) he notified his employer of his intent to take FMLA leave, (5) his employer interfered with his exercise of FMLA rights, and (6) he was prejudiced as a result. *See Tatum v. S. Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (requiring a showing of prejudice to prevail on a FMLA interference claim). Park contends that Direct Energy interfered with his exercise of FMLA rights in four ways.

First, Park claims that Direct Energy interfered by discouraging him from taking the full three months' leave. Interference includes not only refusing to authorize FMLA leave but also "discouraging an employee from using such leave." *Cuellar*, 731 F.3d at 346 (per curiam) (quoting 29 C.F.R. § 825.220(b)). As evidence of discouragement, Park points to Mason's comment that he "wouldn't advise . . . taking 3 months" off.[1] Considering

---

[1] In an affidavit, Park contends that he was also discouraged from taking leave when Mark Baker, a senior vice president who wasn't in Park's chain of command, allegedly told him "that he supposed [Park] would be taking 'the usual two weeks' to be with [his] son and wife after childbirth." Park didn't mention this comment in his complaint, and he

No. 19-20878

the full context of the conversation and the fact that Mason affirmatively tried to help Park secure three months' leave the very next day, this innocuous comment wouldn't discourage any reasonable employee from exercising FMLA rights. Park also fails to show prejudice. Despite Mason's comment, Park requested twelve weeks of intermittent child-bonding leave, and MetLife approved his request in full.[2] *See De La Garza-Crooks v. AT&T*, 252 F.3d 436 (5th Cir. 2001) (unpublished) (observing that "[a] plaintiff suffers no FMLA injury when she receives all the leave she requests" (quoting *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir. 1999))).

Second, Park claims that Direct Energy interfered by requiring him to continue performing work during the two weeks of paid time off that he took after his son's birth. "Giving employees the option to work while on leave does not constitute interference with FMLA rights so long as working while on leave is not a condition of continued employment." *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 210 (5th Cir. 2018). Although Mason did ask Park to complete some minimal tasks from home, Park "never expressed reservations to [Mason] about performing work." *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1159 (8th Cir. 2016). And there's

---

testified during his deposition that *he* told Baker that he was "contemplating a couple of weeks off"—not the other way around. Parties can't defeat summary judgment with affidavits that impeach sworn testimony without explanation. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).

[2] Although Park testified, and the record confirms, that Direct Energy agreed to let him take twelve weeks of intermittent child-bonding leave, he later claimed in an affidavit that "MetLife was very confusing in its administration of the newborn leave processes, initially informing me that I could get intermittent leave . . . but later informing me that I could not." Neither Park's affidavit nor his brief points to any record evidence showing that MetLife told him that he couldn't take intermittent leave. Because Park's affidavit directly contradicts his deposition testimony as well as the transcripts of his phone calls with MetLife and the letter approving his request, it doesn't create a genuine dispute of fact on this point. *See S.W.S. Erectors*, 72 F.3d at 495.

no evidence that Mason required Park to work during his time off as a condition of continued employment. *See id.* According to Park, Mason testified during his deposition that he expected Park to perform work assigned to him "as a condition of his continued employment." That's misleading. Mason agreed that he generally expects his employees to perform work assigned to them as a condition of employment, but he made it very clear—more than once—that he was speaking broadly about his expectations of his employees in general, not about the two-week period that Park took off.

Third, Park claims that Direct Energy interfered by not giving him an individualized notice of his FMLA rights for his "serious health condition" after his car accident. When an employer "acquires knowledge that an employee's leave may be for an FMLA–qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). Failure to give the required notice "may constitute" interference. *Id.* § 825.300(e). If the employer gave notice of the employee's eligibility for a different FMLA-qualifying reason during the same twelve-month period and the employee's eligibility status hasn't changed, however, "no additional eligibility notice is required." *Id.* § 825.300(b)(3). Strachan notified Park of his FMLA rights and eligibility in January 2018. As a result, Direct Energy didn't need to provide another eligibility notice when Park told Mason about his accident two months later.

Fourth, Park claims that Direct Energy interfered by trying to induce him to waive his FMLA rights prospectively in a separation agreement. "Employees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA." 29 C.F.R. § 825.220(d). But Park didn't raise this claim in his complaint; in fact, his complaint doesn't mention the proposed separation agreement at all. So this claim wasn't properly before the district court, and it won't be considered here. *See Cutrera v. Bd.*

*of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in . . . a motion for summary judgment is not properly before the court.").

In sum, we hold that the district court didn't err in granting summary judgment in favor of Direct Energy on Park's interference claims.

B.

We turn next to Park's FMLA retaliation claim. In the absence of direct evidence of retaliatory intent, we apply the familiar *McDonnell Douglas* burden-shifting framework to FMLA retaliation claims. *Tatum*, 930 F.3d at 713. Under this framework, the plaintiff must first establish a prima facie case of retaliation by showing that "(1) he engaged in a protected activity, (2) the employer discharged him, and (3) there is a causal link between the protected activity and the discharge." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020) (quoting *Tatum*, 930 F.3d at 713). If the plaintiff makes a prima facie case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for its decision. *Id.* Once the employer gives a legitimate reason, the burden shifts back to the plaintiff to prove that the employer's stated reason is a pretext for retaliation. *Id.*

Like the district court, we assume without deciding that Park made a prima facie showing of retaliation. The burden thus shifts to Direct Energy to proffer a legitimate, nonretaliatory reason for Park's termination. "'This burden is one of production, not persuasion,' and it involves no credibility assessment." *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Direct Energy offered evidence that it fired Park for his poor job performance. "Job performance is a legitimate, non-retaliatory reason for termination." *Id.* (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)).

Because Direct Energy gave a legitimate reason for its decision, the burden shifts back to Park to show that the stated reason is pretext for retaliation. To avoid summary judgment, Park must show that there is a "conflict in substantial evidence" on this issue. *Id.* (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012)). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 561–62 (quoting *Hernandez*, 670 F.3d at 658).

As evidence of pretext, Park points to (1) his good performance and recent bonus and raise, (2) Direct Energy's failure to follow its progressive discipline policy before firing him, and (3) Mason's comments about him. Taking this evidence in its totality and in the light most favorable to Park, we find this evidence insufficient to defeat summary judgment.

First, Park's evidence of his supposedly good performance doesn't show that Direct Energy's stated reason for firing him is pretextual. Park points out that his 2017 review rates him as "achieving" expectations. That's true, but Park ignores the parts of the review that are critical of his performance. In fact, the review says that Park "must improve." What's more, Mason told Park's previous supervisor that he would rate Park as "achieving" to give Park the benefit of the doubt for time before he became Park's supervisor, but Mason would have given Park an unsatisfactory rating if it were based on Park's performance since Mason joined the team. Mason made that statement in 2017, before Park ever mentioned a possibility of taking leave. Park's bonus and raise are also irrelevant here. Mason explained that the bonus and raise were tied to Park's 2017 review. The decision to fire Park, however, was based on Park's failure to improve *after* that review.

Park of course disagrees that his performance was deficient, but he misses the point. The issue isn't whether Direct Energy's assessment of

Park's performance was correct or fair; the issue is whether Direct Energy's perception of Park's performance was the real reason for his termination. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408–09 (5th Cir. 1999).

Second, Direct Energy's failure to follow its progressive discipline policy by not giving Park a written warning or putting him on a performance improvement plan doesn't show pretext. "[W]hen an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to inferences of pretext." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015). Even if the policy isn't mandatory, failure to follow the policy may still raise an inference of pretext if the policy "specifically stat[es] that it should be 'followed in most circumstances.'" *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 n.29 (5th Cir. 2005).

Unlike the discipline policy in *Machinchick*, however, Direct Energy's policy clearly states that a supervisor "may combine or skip steps . . . depending on the facts of each situation," and the appropriate level of disciplinary action will vary. *See Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 367 (5th Cir. 2009) (unpublished). Wilson also testified that, as a practical matter, Direct Energy doesn't follow the four-step procedure when disciplining director-level employees. Park offered no evidence that Direct Energy "adhered to its disciplinary policies differently" in cases involving other director-level employees. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007). "In the absence of any evidence that [Direct Energy] generally followed the four steps outlined in its disciplinary policy, or that the policy was applied differently to similarly situated employees, the fact that [Direct Energy] did not follow the four steps does not" establish pretext. *Taylor*, 322 F. App'x at 367.

Third, Park points to a comment made by Mason as indirect evidence of pretext. "Around late February 2018," Mason's assistant, Sammie

Chandler, allegedly overheard Mason tell a coworker that Park was "taking advantage of the system" by trying to take more time off for his newborn son. For workplace comments to be circumstantial evidence of pretext, they generally must show that the decisionmaker, or a person with influence over the decisionmaker, had a discriminatory or retaliatory animus. *Goudeau*, 793 F.3d at 475–76. If the plaintiff hasn't offered "substantial evidence of pretext" alongside the comments, however, we apply a more stringent standard. *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001). In that situation, the comments raise an inference of pretext only if they are (1) related to the plaintiff or protected class at issue, (2) proximate in time to the challenged employment decision, (3) made by a person with authority over the decision, and (4) related to the decision. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).

Mason's comment about Park's "taking advantage of the system" doesn't show a retaliatory animus against Park for exercising his FMLA rights.[3] At the time Mason allegedly made that comment, he didn't know that Park intended to take FMLA leave as opposed to paid vacation time. Park never informed Mason that he intended to take FMLA leave. He told Mason only that he "might" take some leave, and he admitted that he wasn't sure when he might take leave or how long that leave might be. *Cf. Wilson v. Noble Drilling Servs., Inc.*, 405 F. App'x 909, 913 (5th Cir. 2010) (unpublished) (holding that the plaintiff's statement to his supervisor that he "might" need to take leave after his baby is born didn't make the supervisor aware of the

---

[3] Park relies on two other comments as well, but they don't merit much discussion: (1) on the day Park's son was born, Mason told a senior vice president that his team would be "a little touch and go for a bit" while Park was away; and (2) on April 9, 2018, when another manager asked if Park could help with financial aspects of a project, Mason told her that Park was "behind right now" and wasn't available to help. No reasonable jury could conclude that these comments show a retaliatory animus.

plaintiff's intent to take FMLA leave). Because Mason never knew that Park intended to exercise FMLA rights, his comment doesn't suggest that he had a retaliatory animus.

Even if Mason knew that Park intended to take FMLA leave, this comment is insufficient, standing alone, to show pretext. *Compare Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 335 (5th Cir. 2005) (holding that supervisor's comment, in reference to employee on FMLA leave, that he would "just fire her ass" and "worry about it later" showed a retaliatory animus), *and Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) (holding that coworker's frequently repeated comment that the plaintiff was an "old bitch" showed a discriminatory animus), *with Waggel v. George Washington Univ.*, 957 F.3d 1364, 1375 (D.C. Cir. 2020) (holding that supervisor's comment that the plaintiff had taken "too much sick leave" didn't raise a genuine issue of material fact on pretext).

Park didn't meet his burden of raising a genuine dispute of fact on pretext, so the district court didn't err in granting summary judgment in favor of Direct Energy on Park's retaliation claim.

## IV.

Finally, we turn to Direct Energy's cross-appeal, which challenges the grant of summary judgment in favor of Park on Direct Energy's counterclaim for breach of contract. Park allegedly owes $7,600 for air-conditioning services that Airtron, Inc., a subsidiary of Direct Energy, provided in 2017. The district court dismissed Direct Energy's counterclaim because the relevant contract was between Park and Airtron, not Direct Energy.

Before reaching the merits of Direct Energy's cross-appeal, however, we must assess jurisdiction. Although Park never questioned the district court's jurisdiction over the counterclaim, we have a duty to raise the issue

No. 19-20878

of subject-matter jurisdiction sua sponte, if necessary. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003).

After we called attention to this issue, Direct Energy conceded that there's no independent jurisdictional basis for its counterclaim. So we must determine whether the counterclaim satisfies the test for supplemental jurisdiction. Federal courts have supplemental jurisdiction over claims that are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The question, then, is whether Direct Energy's counterclaim is so related to Park's FMLA claims that they "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Direct Energy admits that its counterclaim is permissive and has no factual connection to Park's FMLA claims. Thus, the district court lacked subject-matter jurisdiction over Direct Energy's counterclaim.

## V.

In conclusion, we AFFIRM the district court's grant of summary judgment on Park's FMLA claims. Because the district court lacked subject-matter jurisdiction over Direct Energy's counterclaim, however, we VACATE the district court's grant of summary judgment on Direct Energy's counterclaim and REMAND with instructions to dismiss Direct Energy's counterclaim for lack of subject-matter jurisdiction.