# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 16, 2021

Lyle W. Cayce
Clerk

No. 20-30549
Summary Calendar

REGINALD WILLIAMS,

*Plaintiff—Appellant*,

*versus*

MARTIN MARIETTA; BOSSIER CITY READY MIX,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:18-CV-1144

Before HIGGINBOTHAM, JONES, and COSTA, *Circuit Judges*.

PER CURIAM:[*]

Reginald Williams appeals the district court's grant of summary judgment to Martin Marietta Materials, Inc. ("Martin Marietta") with respect to his Family Medical Leave Act ("FMLA") retaliation claim. After careful review of the record, we AFFIRM.

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-30549

# I. BACKGROUND

The facts are straightforward. Williams worked as a ready-mix concrete truck driver for Martin Marietta from 2014 until his termination in 2017. He reported to Plant Manager Rick Wills, who in turn reported to District Manager Jack Brown.

Martin Marietta uses an automated system for scheduling start times for its drivers. Before his shift, Williams would call the system to identify his scheduled start time. Upon arriving at the plant, he would "clock-in" by entering a unique code and scanning his fingerprint. If he arrived more than ten minutes late the computer would flag him as "tardy," and if he failed to clock-in altogether the system would flag an unexcused absence. Wills used these computer records to tally attendance on a weekly basis.

In June 2016, Martin Marietta implemented a new attendance policy, which Williams was aware of, setting guidelines for when employees would be warned, suspended, and terminated for "tardies" and unexcused absences. Under the policy, a driver with a disciplinary infraction could be fired immediately.

Later that month, Martin Marietta suspended Williams for insubordination because he refused a dispatcher's instructions to clock-out and go home. The resulting write-up warned that "[a]ny further performance infractions will result in further disciplinary action, up to and including termination." Between the time of his suspension and termination, Williams accumulated several tardies and two absences.

In early February 2017, Williams requested FMLA paperwork because he anticipated needing leave to care for his dying father. Shortly thereafter, he received a Notice of Eligibility and Rights & Responsibilities stating that a certification had to be returned within 15 days of his receiving the letter. Williams advised Martin Marietta that he "wasn't fixing to take it right then" and "just wanted to have it prepared." A short time later, Martin

2

Marietta notified Williams that he was being terminated for "tardies" and "absenteeism." Williams disputed certain incidents and Martin Marietta rescinded the termination decision.

On March 28, 2017, Williams notified Martina Marietta that he needed to begin his FMLA leave, and his request was verbally approved. He returned to work on April 10, 2017, after his father passed. Martin Marietta did not mark Williams tardy, absent, or otherwise penalize him during this period. Wills and Brown both expressed their condolences, Brown sent flowers to the funeral, and Williams agrees that "the folks at Martin Marietta were compassionate and thoughtful during [that] time." Additionally, Martin Marietta provided paid leave to Williams, which is not required under the FMLA.

Approximately a month after Williams returned to work, Martin Marietta again informed Williams that he was being terminated. According to company records, Williams had accrued two unexcused absences and ten tardies between his suspension in June 2016 and his termination in May 2017. Brown, in consultation with Wills, based the decision on that record.

After his termination, Williams persisted in contending that some of his tardies were incorrect. He alleged the errors arose from a systemic problem that required manual adjustment of the computer records in some instances. The company Human Resources ("HR") department independently reviewed the relevant time records, interviewed Williams multiple times, and ultimately removed three of the ten tardies. Nevertheless, Brown decided not to reverse his termination decision.

Williams sued Martin Marietta for race discrimination and FMLA interference and retaliation. The district court granted summary judgment in favor of Martin Marietta on all claims. Williams timely appeals the dismissal of his FMLA retaliation claim.

No. 20-30549

## II. DISCUSSION

We review a grant of summary judgment *de novo*, applying the same standard as the district court. *Milton v. Tex. Dep't of Crim. Just.*, 707 F.3d 570, 572 (5th Cir. 2013). Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Depree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009) (internal citations omitted); *see* FED. R. CIV. P. 56. The court views all facts and evidence in the light most favorable to the non-movant. *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 675 (5th Cir. 2010).

We analyze FMLA retaliation claims under the familiar *McDonnell Douglas* burden-shifting framework.[1] *Tatum v. S. Co. Serv., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 1824–25 (1973). This case turns on step three of that framework: Whether Martin Marietta's non-retaliatory reason for the firing was pretextual.[2] To show that Martin Marietta's "proffered nondiscriminatory reason is mere pretext, [Williams] must show that [Martin Marietta's] explanation is false or 'unworthy of credence.'" *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 492 (5th Cir. 2018) (quoting *Reeves v. Sanderson*

---

[1] First, the plaintiff must show "a *prima facie* case of interference or retaliation." *Tatum*, 930 F.3d at 713. Then, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (citation and quotation omitted). Finally, "the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Id.* (citation and quotation omitted).

[2] The first two *McDonnell Douglas* steps are satisfied. Martin Marietta does not challenge the district court's finding that Williams engaged in protected FMLA activity or that a fact issue exists as to the cause of his firing by its temporal proximity to his FMLA leave. Williams presented a *prima facie* case. At step two, Williams does not challenge that the company relies on its warning to him and his subsequent tardies and unexcused absences as its legitimate, non-discriminatory reason to terminate him.

*Plumbing Prod., Inc.*, 530 U.S. 133, 147, 120 S. Ct. 2097, 2108 (2000)). Williams "cannot establish pretext solely by relying on [his] subjective belief that unlawful conduct occurred." *Id.* (citing *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997)).

Williams makes two arguments in this appeal. First, he contends that the district court "failed to view the evidence in the light most favorable to the non-moving party." Second, he challenges the "honest belief" doctrine and argues that the district court "made impermissible assessments of credibility."[3] Because the bulk of his brief challenges the employer's honest belief in its grounds for decision, we start with that contention.

### A.     Honest Belief Doctrine

Williams seems to argue that *any* assessment of the "honesty" of an employer's "beliefs" necessarily "requires making credibility determinations that should be left to the jury." The upshot of his argument is that summary judgment would almost always be denied when pretext is at issue at step three of the *McDonnell Douglas* framework. Williams invokes *Reeves* for support, contending that "the Supreme Court has expressed serious doubt whether summary judgment is ever appropriate in an employment discrimination matter involving nebulous questions of intent and reasonableness of conduct." In so doing, Williams misreads *Reeves* and misapplies the facts of this case.

---

[3] Notably, the district court never used the phrase "honest belief" in its decision. Rather, the court relied on an array of evidence to support its conclusion that Williams did not show pretext, including: (1) attendance records, (2) the absence of disparaging comments or previously positive reviews, (3) prior reversal of termination, (4) investigation and correction of erroneous time entries, and (5) Martin Marietta's progressive discipline policy. The court also relied on this court's decisions holding that even an employer's incorrect belief about an employee's inadequate performance may be a legitimate, nondiscriminatory basis for its actions. *See Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (making this point).

*Reeves* unambiguously recognizes that summary judgment can be appropriate in discrimination cases, even when the decision involves an inquiry into an employer's reasoning. *See Reeves*, 530 U.S. at 148, 120 S. Ct. at 2109 ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." (citation omitted)). *Reeves* lists relevant factors to consider that include "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148–49, 120 S. Ct. at 2109.

As explained below, summary judgment for Martin Marietta is appropriate under these factors. And, unsurprisingly, this court has affirmed grants of summary judgment under analogous circumstances. *See, e.g.*, *Tatum*, 930 F.3d at 714–15 (affirming summary judgment on an FMLA interference and retaliation claim, and concluding the employer's reason for termination was not pretextual where the plaintiff had already been issued a disciplinary warning, "his conduct [over the years] was unacceptable," and the company "had a good-faith reason for firing [him]"); *DeVoss*, 903 F.3d at 492 (affirming summary judgment on an FMLA interference claim after concluding that the plaintiff's reference "to several alleged procedural irregularities" failed to show the company's "proffered reason of dishonesty [was] merely pretextual").

B.    Summary Judgment Evidence.

The combination of Williams's suspension and subsequent attendance infractions make a strong showing that Martin Marietta had legitimate, non-discriminatory bases to terminate him. Thus, Williams must

show these reasons were pretextual or unworthy of credence. Williams attempts to do so by relying on the temporal proximity between his termination and FMLA leave, and Brown's decision not to reverse his termination even "after the post-FMLA leave tardies were withdrawn."

This court has been clear: "Temporal proximity gets [a plaintiff] through his prima facie case but does not, on its own, establish that the company's stated explanation for [his] firing was mere pretext."[4] *Garcia v. Pro. Cont. Serv., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (citation omitted). This is because "the pretext stage . . . requires a showing of but-for causation, which requires more than mere temporal proximity." *Id.* at 243–44 (citations omitted). Williams's reliance on temporal proximity alone does not show pretext.

Nor does Brown's failure to reverse Williams's termination decision after HR removed three tardies support a genuine fact issue as to pretext. At the time of termination, Martin Marietta delineated the attendance infractions that precipitated its decision.[5] The company further identified

---

[4] *See also United States ex rel King v. Solvay Pharm., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017) (concluding at summary judgment that "evidence of both being terminated at least three-and-a-half months after making their complaints and positive performance reviews prior to their terminations does not create a fact issue as to pretext" in a False Claims Act case); *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807–08 (5th Cir. 2007) (concluding that this court's precedent "lends no support whatsoever" to the plaintiff's argument in a Title VII retaliation case that "summary judgment is simply inappropriate in retaliation cases where the adverse employment decision follows closely on the heels of the plaintiff's complaint of discrimination," and instead "affirmatively reject[ed] the notion that temporal proximity standing alone can be sufficient proof of but for causation").

[5] The description of the incidents leading to termination in the relevant incident report speaks for itself: "You have called in stating you would not be at work on 2 different occasions . . . . In addition, you have been late on 10 different occasions. On January 22nd 2017 Rick Wills and myself spoke with you and advised you that you needed to focus on being on time . . . . Unfortunately, we have no other choice but to move forward with termination."

previous attempts to correct Williams's performance problems.[6] Williams does not dispute the fact that *at the time of his termination* the computer system indicated ten tardies, including two post-dating his FMLA leave. That Martin Marietta interviewed Williams multiple times after termination, extensively reviewed his attendance records, and decided to remove three tardies demonstrates, if anything, its good faith. And the fact that Brown chose not to reverse his decision, in the face of Williams's long history of attendance issues, does not raise an inference of pretext.

Not only does Williams fail to demonstrate pretext, but the record evidence supports the opposite inference—that Martin Marietta wholeheartedly condoned Williams's FMLA leave. Williams acknowledges the company's actions. The company provided Williams with paid leave when it was not required to do so. Wills and Brown expressed their condolences to Williams, and Brown sent flowers to the funeral. Completely absent from the record is any indication that anyone in the company disapproved of Williams's leave request.

Further, Williams's efforts to provide evidence of pretext completely failed. For example, he alleges in his complaint that two other employees had "significantly worse" attendance records but "had not taken FMLA leave" and were not terminated. But the record evidence demonstrated the opposite: neither individual had any suspensions, and each had far fewer absences and tardies than Williams.

Additionally, Williams argued before the district court that Martin Marietta failed to follow its "own progressive discipline policy." But, as the

---

[6] The relevant incident report further identified prior attempts to correct performance issues as follows: "You have signed the attendance policy and received a copy. As well, you have been suspended for refusing to come in and work nights on 6/23/16. You were informed that any more performance violations would lead to termination, and that this record is reflected over the previous 12 months." **ROA.164.**

district court observed, Williams already had a disciplinary action on file and was thereby warned that further infractions could result in termination, as was consistent with company policy.  On appeal, Williams argues simply that the progressive disciplinary policy "allows for the exercise of discretion" and is consequently a question for the jury, a contention we have already rejected.

In short, we agree with the district court that "Williams is left with only the temporal proximity" argument to show pretext.  That is not enough.  The paucity of evidence supporting Williams's claim decides this case.

## III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment.