# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

——————

No. 16-20408

——————

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2017

Lyle W. Cayce
Clerk

GERALD CALDWELL,

Plaintiff–Appellant,

v.

KHOU-TV; GANNETT COMPANY, INCORPORATED,

Defendants–Appellees.

————————————

Appeal from the United States District Court
for the Southern District of Texas

————————————

Before PRADO, HIGGINSON, and COSTA, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

After being fired, Gerald Caldwell sued his employers, KHOU-TV and Gannett Company, Inc. (collectively, "the Defendants"), for violations of the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"). The district court granted summary judgment in favor of the Defendants and Caldwell appealed. Because we find that Caldwell raised a genuine issue of fact over whether the Defendants' reasons for firing him were pretextual, we REVERSE and REMAND.

No. 16-20408

## I. FACTUAL BACKGROUND

Gerald Caldwell originally began working as a video editor at KHOU-TV ("KHOU") in 1995. Caldwell was disabled at the time he was hired by KHOU because he had suffered childhood bone cancer. Because of damage to his leg as a result of the cancer, Caldwell moved around with the assistance of crutches.

At KHOU a video editor's work is split between two primary tasks: (1) editing scripts and (2) working in electronic digital recording ("EDR"). By late 2012, video editors began spending a much larger portion of their work time in EDR. Even though most editors were scheduled to work in EDR between two and three times a week, Caldwell was not. As Charlie Butera and Robert Kell, Caldwell's direct supervisors, testified, they felt it would be difficult for Caldwell to move around the EDR room because it is "tight in spots" and they "didn't want to put him in any health jeopardy because of all that."[1] In spite of this limitation, Caldwell would spend time in EDR when other editors went on break and testified that he took it upon himself to stay up-to-date on changes taking place in EDR.

In March or April 2014, Caldwell told his supervisor and the human resources manager that he would need to take leave for two upcoming surgeries. Caldwell initially did not have a date for his second surgery because it depended on the outcome of the first, but promised to provide a date as soon as he had one. At the time, both Caldwell's supervisor and the human resources manager agreed to this arrangement. Caldwell was ultimately fired before this second surgery could take place.

---

[1] Butera initially made the decision to limit Caldwell's EDR assignments, but Kell continued the practice after replacing Butera as Caldwell's supervisor.

No. 16-20408

Also in 2014, Gannett Company, Inc. ("Gannett"), KHOU's parent company, mandated a reduction-in-force ("RIF") and required KHOU to eliminate two editor positions.[2] Philip Bruce, the news director, was charged with deciding who would be fired but was assisted by Kell, Caldwell's supervisor at the time, and Art Murray. Bruce testified that Kell and Murray provided him with specific information about "day-to-day operation[s]" and asked for their suggestions about who to fire given how the video editing positions were "going to continue to evolve over the coming months and . . . years." Based on input from Kell and Murray, Bruce made the decision to fire Caldwell and another editor, Parrish Murphy. Before the decision was made, Murphy had been individually informed of his inadequate performance per KHOU policy and had been given the opportunity to improve; Caldwell was not given equivalent forewarning or opportunity to improve his performance.

In explaining the decision to terminate Caldwell, the Defendants initially stated that "Caldwell repeatedly made it very clear to his supervisors and his colleagues that . . . he preferred not to work in EDR." Later, Bruce likewise intimated that Caldwell was fired because he actively avoided taking on EDR work. In the Defendants' motion for summary judgment, however, the Defendants stated that "[a]fter reviewing all of the video editors, Bruce, Kell, and Murray believed that [Caldwell] had not taken the initiative to spend as much time in EDR as other members of the edit staff." And in spite of all this, Bruce also maintained that the decision to fire Caldwell had "[a]bsolutely nothing at all" to do with Caldwell's work ethic. Murphy, on the other hand, was fired because he not only had problems in EDR but also had been caught sleeping at work.

---

[2] Gannett purchased KHOU as part of its acquisition of the Belo Corporation shortly before the events of this case.

3

No. 16-20408

Caldwell filed suit against the Defendants on February 3, 2015, alleging violations of both the ADA and FMLA.[3] The Defendants then filed a motion for summary judgment, which was granted by the district court on June 3, 2016. Caldwell timely appealed.

## II. DISCUSSION

This Court "reviews a district court's grant of summary judgment de novo, applying the same standards as the district court." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, factual inferences are viewed in the light most favorable to the nonmoving party. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). "[T]he salutary function of summary judgment in the employment discrimination arena [is that] summary judgment allows patently meritless cases to be nipped in the bud." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 814 (5th Cir. 1991) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 645 n.19 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)).

## A.    The ADA Claim

Caldwell first argues that the district court erred in granting summary judgment on his ADA claim. The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish an ADA discrimination claim, a plaintiff may present "direct evidence that [he] was discriminated against because of [his]

---

[3] The Defendants rehired Caldwell during the course of this litigation. Since being rehired, Caldwell has shown to be capable of performing EDR work and it now constitutes a significant majority of the work he does.

4

disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 . . . (1973)." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016). Caldwell does not present any direct evidence of discrimination and must therefore proceed under the *McDonnell Douglas* burden-shifting framework.

Caldwell bears the initial burden under *McDonnell Douglas* to establish his prima facie case of discrimination. *Id.* at 765. To carry this burden, Caldwell must establish: (1) he has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability.[4] *Id.* "If he makes that showing, a presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)). The burden then shifts back to the plaintiff "to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.* "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d

---

[4] The district court applied a modified *McDonnell Douglas* test because this case arises from the employer's general reduction in its workforce. Under this modified test a plaintiff must show: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge;" and (4) he was replaced by someone not in the protected class, or "otherwise discharged because of his [membership in the protected class]." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (quoting *Bodenheimer v. PPG Indus., Inc.* 5 F.3d 955, 957 (5th Cir. 1993)). As the district court recognized, this Court has used this modified test to analyze other forms of employment discrimination—primarily age discrimination—but we have never applied the modified version of the test in the ADA context. We need not determine which iteration of the *McDonnell Douglas* test is more appropriate here, as the parties do not dispute whether Caldwell met his initial burden by presenting a prima facie claim of discrimination.

374, 378–79 (5th Cir. 2010) (internal quotation marks omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

The parties neither contest the district court's determination that Caldwell established a prima facie case of discrimination, nor do they dispute the district court's conclusion that the Defendants raised a legitimate nondiscriminatory reason for firing Caldwell—namely, an RIF. Instead, Caldwell argues that the district court erred by failing to find that Caldwell presented sufficient evidence of pretext. Caldwell argues that summary judgment should have been denied because there was evidence that the Defendants: (1) gave false explanations for firing Caldwell; (2) changed their explanations for firing him; (3) limited and segregated Caldwell in a way that adversely impacted his performance; and (4) did not give Caldwell the same opportunities as other employees. "In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Thornbrough*, 760 F.2d at 646. We hold that Caldwell has met this burden.

First, Caldwell argues that the Defendants' explanations for firing him are unworthy of credence because they were inconsistent over time and erroneous. An employer's inconsistent explanations for an employment decision "cast doubt" on the truthfulness of those explanations. *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002); *see also Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 n.11 (5th Cir. 2007) ("[A]n employer's inconsistent explanations for its employment decisions at different times permit[] a jury to infer that the employer's proffered reasons are pretextual."). For example, in *Burrell*, an employer at different times offered different explanations for its decision to promote an employee over the plaintiff. 482

F.3d at 413. Before the EEOC, the employer stated that the plaintiff lacked "purchasing experience." *Id.* But before the district court, the employer stated that the plaintiff lacked "bottling experience." *Id.* And before this Court, the employer stated that that the plaintiff lacked "purchasing experience in the bottling industry." *Id.* Considering this inconsistency in combination with evidence suggesting the plaintiff was better qualified than the employee ultimately promoted, this Court concluded that "a genuine issue of material fact remain[ed] regarding whether [the employer's] hiring decision was based on" the nondiscriminatory reason advanced by the employer. *Id.*

Likewise, Caldwell has presented sufficient evidence to raise a question of material fact as to whether the Defendants' RIF rationale and their attendant reasons for terminating him were mere pretext. The Defendants' explanations have transformed over time; they first asserted that Caldwell shirked his responsibilities by *refusing* to do the EDR work he had been assigned and then later claimed that Caldwell did not take the *initiative* to seek out additional EDR work. In a letter to Caldwell's counsel and later in response to a series of interrogatories, the Defendants first stated that their decision to fire Caldwell was a result of Caldwell's refusal to work in EDR. Then, in a letter to the EEOC, the Defendants stated that Caldwell was terminated not because he was a "slacker" but rather because of his "inability and unwillingness to adapt to technological changes." Finally, before the district court, the Defendants abandoned their prior explanations and instead argued that Caldwell had been fired because he "had not taken the initiative to spend as much time in EDR as other members of the edit staff" and was thus not as proficient as other employees at performing EDR tasks. Contrary even to this, Philip Bruce, the news editor responsible for the ultimate decision to fire Caldwell, testified before the district court that terminating Caldwell had "[a]bsolutely nothing at all" to do with Caldwell's work ethic. These statements

evince inconsistency in the Defendants' explanations for firing Caldwell and are thus probative of their truth.[5]

Caldwell has also presented other evidence calling into question the veracity of his employer's explanations. As explained above, the Defendants' explanations for Caldwell's dismissal have evolved from insubordination to a lack of initiative. As to Caldwell's unwillingness to work in EDR, Caldwell testified that he never expressed such a preference. Similarly, Caldwell's supervisors stated that they had no knowledge of Caldwell ever expressing a preference against working in EDR. There is also a question as to whether the Defendants' lack-of-initiative explanation was truthful. Caldwell testified, and his supervisors confirmed, that it was ultimately the employer's decision to limit Caldwell's time working in EDR, not Caldwell's. Bruce even testified that Caldwell's work ethic was not an issue, and Caldwell stated that in spite of his limited EDR schedule, he tried to stay up-to-date on the latest trainings and information regarding EDR that the Defendants provided to other staff.

Caldwell also cites 42 U.S.C. § 12112(b)(1) to argue that the Defendants impermissibly limited and segregated Caldwell by not assigning him to as many EDR shifts as they assigned to other employees. The district court rejected Caldwell's argument here because it concluded that this ADA

---

[5] The district court dismissed these inconsistencies, concluding that the evidence presented by Caldwell was insufficient because the statements were "not written by the decision-maker, Bruce." As an initial matter, we note that there is at least some evidence that Bruce, the ultimate decision-maker in this case, gave contradictory explanations for his decision to fire Caldwell. Further, this Court has not adhered to a bright-line rule that only the decision-maker's statements can be considered when determining whether a plaintiff has presented sufficient evidence of pretext based on inconsistent explanations for an employment decision. Indeed, we have explicitly considered inconsistent statements made by an employer and its representatives to the EEOC and to the court. *See, e.g.*, *Burrell*, 482 F.3d at 412–13 & n.11 (stating simply that "an *employer's* inconsistent explanations for its employment decisions at different times" are probative of whether those explanations are pretextual, and considering statements made by the employer's representatives before the EEOC, the district court, and the Fifth Circuit (emphasis added)).

prohibition on segregation had only previously been applied to cases of physical segregation. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 587–88 (1999) (holding that the ADA's "proscription of discrimination may require placement of persons with mental disabilities in [nonisolated] community settings"); *Frame v. City of Arlington*, 657 F.3d 215, 231 (5th Cir. 2011) (concluding that altering sidewalks to make them inaccessible to those with physical disabilities violates the ADA). Because the only cases Caldwell cites involve physical segregation and there is no evidence that Caldwell was physically isolated from nondisabled employees, we agree with the district court that this argument is unpersuasive. *See Olmstead*, 527 U.S. at 587–88; *Frame*, 657 F.3d at 231.

Finally, Caldwell contends that the Defendants did not give him the same opportunities as other employees because of his disability. Specifically, Caldwell argues his case is similar to *Vaughn v. Edel*, 918 F.2d 517 (5th Cir. 1990). In *Vaughn*, an employer fired an African-American woman for substandard job performance. 918 F.2d at 520. Although the employer had counseled white employees when their work was subpar and gave them an opportunity to improve, no such opportunity was given to the defendant. *Id.* at 522. Moreover, the defendant received a pay increase during the time when her performance was apparently lacking—an action which would have indicated to the defendant that her supervisors were satisfied with her work. *Id.* at 523. This Court noted that "[a]lthough [the defendant's] race may not have directly motivated the . . . decision to fire her, race did play a part" because the defendant would have been notified that her performance was deficient if she had been white and would "at least [have had] an option to improve, thereby reducing or removing the risk of being fired." *Id.* at 522–23.

We agree with Caldwell that this case is analogous to *Vaughn*. Here, the district court found that Caldwell "was not scheduled to work regular shifts in EDR because of his disability." Further, the Defendants, like the employers in

No. 16-20408

*Vaughn*, had a practice of consulting with employees who were performing their jobs inadequately. And as was the case with the defendant in *Vaughn*, this policy was not applied to Caldwell—no one ever informed Caldwell that he should have been doing more work in EDR. Indeed, unlike other employees, Caldwell was actually prevented from doing EDR work by his employer, a limitation that was ultimately used as a basis for his termination. This differs from the Defendants' treatment of the only other editor laid off during the RIF who was not disabled. Unlike Caldwell, the other editor who was not performing adequately was informed of his deficiencies in a one-on-one meeting, providing that employee with notice and an opportunity to improve, both of which were withheld from Caldwell. Although Caldwell did not receive the sort of affirmative encouragement about his job performance as the defendant arguably received in *Vaughn* (i.e., an increase in pay), he had no apparent reason to believe that his lighter EDR schedule would be a reason for the Defendants to conclude his job performance was inadequate. After all, it was Caldwell's direct supervisors who had not just sanctioned, but mandated, that he spend less time in EDR by not scheduling him to work there. Thus, we conclude that the district court erred in determining that this evidence of disparate treatment was insufficient to raise a material question of fact as to pretext.

Together, the evidence presented by Caldwell creates a genuine issue of material fact as to whether the Defendants' explanations for firing Caldwell were pretextual. *Cf. EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir. 1984) ("[P]retext cannot be established by mere 'conclusory statements' of a plaintiff who feels he has been discriminated against."); *Amburgey*, 936 F.2d at 814 (holding that summary judgment was warranted where the plaintiff's only evidence of pretext was "his own bald assertion that he ha[d] been discriminated against"). Further, this case does not present the sort of "rare

instance" where the plaintiff has only presented "a weak issue of fact as to whether the employer's reason was untrue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *see also Laxton*, 333 F.3d at 578. Nor is there "abundant and uncontroverted independent evidence that no discrimination ha[s] occurred." *Reeves*, 530 U.S. at 148; *see also Laxton*, 333 F.3d at 578. Here, Caldwell has presented evidence other than his own assertions in support of his arguments which together raise a genuine issue of material fact as to whether the reasons the Defendants gave for terminating Caldwell were pretextual. Accordingly, we hold that the district court erred in granting summary judgment in favor of the Defendants on Caldwell's ADA claim.

## B.    The FMLA Claim

Caldwell also argues that the district court erred by granting summary judgment in favor of the Defendants on his FMLA claim. "The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (quoting 29 U.S.C. § 2612(a)(1)(D)), *abrogated on other grounds by Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702 (5th Cir. 2016). To ensure employees the right to take leave, the FMLA prohibits an employer from "interfere[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right" provided by the Act. 29 U.S.C. § 2615(a)(1). Here, Caldwell claims that the Defendants interfered with his right to FMLA leave by firing him "preemptively" only shortly after he had requested leave.

To establish a prima facie case of interference under the FMLA, a plaintiff must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper

notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA. *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (unpublished) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)). As with the ADA, however, even if the plaintiff makes out a prima facie case, he may not overcome a motion for summary judgment if the employer articulates a legitimate non-discriminatory reason for the employment action at issue. *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016). To prevail in such a case, the plaintiff must raise an issue of material fact that the employer's proffered reason was pretextual. *Id.*

First, Caldwell argues that the district court erred by granting summary judgment on his FMLA claim because the Defendants sought summary judgment only based on a retaliation theory, not an interference theory. Caldwell compares this to the district court acting sua sponte. But none of this warrants reversal. In actuality, the district court in this case was not acting sua sponte because the Defendants filed a motion for summary judgment. Even though the Defendants initially misidentified the theory on which Caldwell was proceeding, they argued only that Caldwell never actually requested FMLA leave and that there was no evidence of pretext. These arguments apply to both FMLA retaliation and interference claims. *Compare Lanier*, 527 F. App'x at 316 (elements of an interference claim), *with Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1996) (elements of a retaliation claim); *see also Miller*, 809 F.3d at 831–32 (where a plaintiff brought both interference and retaliation claims under the FMLA, requiring the plaintiff to offer sufficient evidence that an employer's articulated reason for firing him was "a pretext for discrimination" in support of those claims).

Moreover, the district court ultimately granted summary judgment in favor of the Defendants because it determined Caldwell had not raised a

genuine issue of material fact as to pretext. Both arguments raised by the Defendants apply to interference and retaliation claims alike and the district court granted summary judgment based on those arguments. Therefore, even if this Court were to treat the district court's action as one taken sua sponte, Caldwell undoubtedly received sufficient notice to make the district court's judgment proper. *See Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770 (5th Cir. 2000) ("Although Rule 56 contemplates such a motion being filed, it is well-settled that a district court may grant summary judgment *sua sponte*, 'so long as the losing party has ten days notice to come forward with all of its evidence' in opposition. . . ." (quoting *Washington v. Resolution Trust Corp.*, 68 F.3d 935, 939 (5th Cir. 1995))).

Second, Caldwell argues that the district court erred in granting summary judgment because he raised a genuine issue of material fact as to pretext. Because the pretext arguments Caldwell raised with respect to the ADA apply equally to the FMLA, *see Miller*, 809 F.3d at 832, we hold that the district court erred in granting summary judgment on Caldwell's FMLA claim.[6]

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of summary judgment on both the ADA and FMLA claims and REMAND the case for further proceedings.

---

[6] Caldwell also raises two distinct pretext arguments on his FMLA claim, but these arguments fail. He first asserts that there is evidence of mendacity because the Defendants "claimed [Caldwell] did not seek leave," even though there is evidence otherwise. Because the witness to which Caldwell refers only testified that she did not recall having discussions with Caldwell about taking FMLA leave, this does not suffice as evidence of untruthfulness. Caldwell also contends that he was treated less favorably than those who did not request FMLA leave. As the Defendants correctly point out, however, even though there is evidence that seven other editors did not lose their jobs, nothing in the record shows that those editors had not requested FMLA leave.