# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 23, 2021

Lyle W. Cayce
Clerk

No. 20-11140

James R. Hester,

*Plaintiff—Appellant*,

*versus*

Bell-Textron, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-514

Before Dennis and Engelhardt, *Circuit Judges*, and Hicks,[*] *Chief District Judge*.

Kurt D. Engelhardt, *Circuit Judge*:

The district court granted Bell-Textron, Incorporated's ("Bell-Textron") Rule 12(b)(6) motion to dismiss James R. Hester's first amended complaint. Hester now appeals that dismissal. For the following reasons, we REVERSE and REMAND for further proceedings.

_____

[*] Chief District Judge for the Western District of Louisiana, sitting by designation.

I.

Hester was employed by Bell-Textron from August 1997 through December 2018. During that time, he worked as an engineer, engineer technician, quality inspector, technical publications writer, and Federal Aviation Administration Organization Designation Authorization unit member. Hester suffers from epilepsy and glaucoma. As a result of his epilepsy, he suffered at least five grand mal seizures between September 2014 and April 2017. Hester's wife suffers from stage-four cancer, and Hester assists her with comfort and attending medical appointments.

In March 2017, Hester began reporting to Vance Cribb, who was aware of Hester's medical history, including his seizures and the symptoms associated with his glaucoma and epilepsy. In June 2018, Cribb issued Hester the first poor performance review of Hester's career with Bell-Textron. On October 11, 2018, Cribb issued Hester a final warning related to a part that broke during a testing procedure. Hester protested the final warning to the point of being escorted off work premises and was instructed by Cribb to apply within the next 24 hours for an "employee assistance program" based on his medical conditions. Hester contacted a Bell-Textron human resources employee, who suggested that Hester apply for short-term disability coverage. Hester applied for and was granted short-term disability coverage related to his epilepsy and glaucoma. He additionally applied for and was granted leave under the Family and Medical Leave Act ("FMLA") based on those same medical conditions.

A Bell-Textron human resources employee fired Hester by telephone on December 6, 2018,[1] during the pendency of his FMLA leave. The human resources employee cited Hester's "poor mid-year performance review from

---

[1] It is important to note that, according to the first amended complaint, Hester's firing occurred almost two months after the final warning and his protest of it; and *six* months after the poor performance review cited by the employee who fired Hester.

June 2018" as a reason for the firing and stated that "it was a good time" for Hester to separate from the company. Hester called MetLife Insurance immediately after his firing and was informed that he still had 5.4 weeks of FMLA leave remaining for 2018 and would have an additional 12 weeks of FMLA leave in 2019 to care for his own medical needs and those of his wife.

Hester then filed the underlying lawsuit. Through his first amended complaint, Hester alleged two FMLA claims against Bell-Textron: (1) discriminatory termination during the pendency of his FMLA leave; and (2) interference with his right of reinstatement to his position at the end of his FMLA leave. Hester alleged that he was FMLA-eligible based on his full-time employment with Bell-Textron for more than one year, his serious health conditions of glaucoma and epilepsy, and his wife's serious health condition of cancer. He further alleged that Bell-Textron was subject to the FMLA, because it employed at least 50 employees within a 75-mile radius of his work site for at least 20 work weeks in the prior or current calendar year.

Bell-Textron filed a Rule 12(b)(6) motion to dismiss Hester's first amended complaint, which the district court granted. The district court entered a final judgment dismissing the case with prejudice. This appeal followed.

II.

Our review of a district court's order granting a Rule 12(b)(6) motion to dismiss is de novo. *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020). We accept all factual allegations as true and construe the facts in the light most favorable to the plaintiff. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff alleges facts that allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

### III.

A. Discrimination Claim

The district court dismissed Hester's discrimination claim for failure to state a prima facie claim.

To state a prima facie claim for discrimination or retaliation under the FMLA, the plaintiff must allege that "(1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave." *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). If the plaintiff states a prima facie claim, "the burden shifts to the employer to articulate a legitimate nondiscriminatory or nonretaliatory reason for the termination." *Id.* "Once the employer has done so, the plaintiff must show by a preponderance of the evidence that the employer's reason is a pretext for discrimination or retaliation." *Id.*

There is no dispute that Hester has alleged a prima facie discrimination claim under the first and second elements of *Bocalbos*; the parties disagree on whether Hester has pleaded element (3b) by alleging causation between Bell-Textron's termination decision and his FMLA leave request. The district court found that Hester failed to allege causation, because he pleaded nothing to suggest that Bell-Textron impermissibly terminated him beyond mere timing. The district court further found that

Hester alleged rationales for Bell-Textron's termination decision that were wholly unrelated to the exercise of his FMLA rights: a poor performance review, a workplace protest of a final warning from his supervisor, and an ejection from work premises.

We have stated the following regarding a plaintiff's prima facie burden of demonstrating causation:

> When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the temporal proximity between the FMLA leave, and the termination. Moreover, the plaintiff does not have to show that the protected activity is the only cause of her termination. The plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated.

*Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (internal citations omitted).

Hester sufficiently alleges a causal link between his termination and request for FMLA leave. There is certainly "temporal proximity" between Hester's termination and his FMLA leave, because Bell-Textron terminated him in the middle of his FMLA leave. *Id.* Moreover, the fact that Bell-Textron provided non-FMLA reasons for Hester's termination is not fatal to a prima facie causation showing, because Hester is not required to allege that his protected FMLA activity was the sole cause of his termination. *Id.* Finally, Bell-Textron did not fire Hester at the time of his pre-leave workplace performance issues in June and October 2018, but rather waited until December 2018 to do so—approximately two months into Hester's FMLA leave. As a pleading matter, the alleged timeline of events indicates that Bell-Textron's termination decision was not "completely unrelated" to the exercise of his FMLA rights. *Id.*

For the foregoing reasons, the district court erred in finding that Hester's discrimination claim failed under element (3b) of *Bocabos*. 162 F.3d

at 383. Accordingly, we reverse the district court's Rule 12(b)(6) dismissal of that claim and remand for further proceedings.

## B. Reinstatement Interference Claim

The district court dismissed Hester's reinstatement interference claim for failure to state a prima facie claim.

"It [is] unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA. 29 U.S.C. § 2615(a)(1). To state a prima facie FMLA interference claim, a plaintiff must allege that "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). Once the plaintiff states a prima facie claim, it is the employer's burden on summary judgment to articulate "a legitimate non-discriminatory reason for the employment action at issue," which then may be rebutted if "the plaintiff raise[s] an issue of material fact that the employer's proffered reason was pretextual." *Id.*

An employee generally has the right to be reinstated to his previous position or an equivalent position upon his return from FMLA leave. 29 U.S.C. § 2614(a)(1)(A)–(B). However, the FMLA does not impose a strict liability standard requiring employers, in all circumstances, to reinstate employees following their FMLA leave. *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681–82 (5th Cir. 2013). Under the FMLA, an employee is only entitled to those rights to which he would have been entitled had he not taken FMLA leave. *Id.* at 681 (citing 29 U.S.C. § 2614(a)(3)(B)). Accordingly, an employee claiming a violation of his right to reinstatement "must actually be entitled to the position to which he seeks reinstatement." *Id.* at 682. "Thus, although denying an employee the reinstatement to which he is entitled generally violates the FMLA, denying reinstatement to an employee whose

right to restored employment had *already been extinguished*—for legitimate reasons unrelated to his efforts to secure FMLA leave—does not violate the [FMLA]." *Id*. (emphasis in original).

There is no dispute that Hester has alleged a prima facie interference claim under the first four elements of *Caldwell*; the parties disagree on the fifth element. Citing our decision in *Shirley*, the district court stated that *Caldwell*'s fifth element required Hester to allege that Bell-Textron would not have terminated him had he not taken FMLA leave. Because Hester failed to do so, the district court found that Hester failed to state an interference claim.

The district court erred by applying *Shirley*—a summary judgment case—to a Rule 12(b)(6) motion to dismiss. *Shirley* explained that the employer has an evidentiary burden on summary judgment to prove that the plaintiff would have lost his position even if he had not taken FMLA leave. *Id*. at 682 (citing 29 C.F.R. § 825.216(a)). If the employer satisfies this burden, then the plaintiff must present evidence "sufficient to raise a jury question that [the employer's] stated reason for firing him . . . was pretextual." *Id*. at 683. By requiring Hester to allege that he would not have been terminated had he not taken FMLA leave, the district court erroneously applied the employer's evidentiary burden on summary judgment as a pleading burden that the plaintiff must satisfy to survive a Rule 12(b)(6) motion to dismiss. *See id*. at 682–83; *see also Caldwell*, 850 F.3d at 245.

To plead the fifth element of a prima facie interference claim, Hester was required to allege that Bell-Textron denied him a benefit to which he was entitled under the FMLA. *Caldwell*, 850 F.3d at 245. He did exactly that by alleging that Bell-Textron interfered with his right to reinstatement by failing to restore him to his position upon the termination of his FMLA leave. *See* 29 U.S.C. § 2614(a)(1).

Bell-Textron argues that Hester pleaded himself out of an interference claim by alleging several legitimate justifications for his termination,

including the poor performance review, workplace protest of a final warning from his supervisor, and being escorted off work premises. Bell-Textron contends that Hester's allegations show that he would have been fired even if he had not taken FMLA leave; thus, he was not entitled to reinstatement, and his interference claim fails under *Caldwell*'s fifth element.

We disagree. It is true that "denying reinstatement to an employee whose right to restored employment had *already been extinguished*—for legitimate reasons unrelated to his efforts to secure FMLA leave—does not violate the [FMLA]." *Shirley*, 726 F.3d at 682. However, Hester does not allege that Bell-Textron fired him at the time of his poor performance review in June 2018. Nor does he allege that Bell-Textron fired him at the time of his final warning from his supervisor, workplace protest, and ejection from work premises in October 2018. Instead, Hester clearly alleges that Bell-Textron first notified him of his termination in December 2018—approximately two months after his FMLA leave commenced and while he still had several weeks of leave remaining. Moreover, Hester alleges that immediately after his ejection from the workplace, he was instructed by his supervisor to apply for an "employee assistance program" based on his medical conditions. Bell-Textron's human resources department subsequently aided Hester in gaining approval for FMLA leave. As a pleading matter, the allegation that Bell-Textron directed Hester to an *employee* assistance program and guided him through the FMLA application process—rather than simply firing him outright on the basis of poor workplace performance—indicates that Hester's right to restored employment was still intact when he secured FMLA leave.

For these reasons, the district court erred finding that Hester's discrimination claim failed under the fifth element of *Caldwell*. 850 F.3d at 245. Accordingly, we reverse the district court's Rule 12(b)(6) dismissal of that claim and remand for further proceedings.

IV.

For the foregoing reasons, we REVERSE the district court's Rule 12(b)(6) dismissal of Hester's FMLA interference and discrimination claims and REMAND for further proceedings.