# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-11084

———————

United States Court of Appeals
Fifth Circuit

**FILED**
September 10, 2024

Lyle W. Cayce
Clerk

NATHANIEL KING,

*Plaintiff—Appellant*,

*versus*

DFW INTERNATIONAL AIRPORT BOARD,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CV-929

———————————————————————

Before WIENER, ELROD, and WILSON, *Circuit Judges*.

CORY T. WILSON, *Circuit Judge*:*

Nathaniel King contends that the DFW International Airport Board (DFW) unlawfully discriminated and retaliated against him based on his disabilities, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, while King was employed at DFW International Airport. The district court granted DFW summary judgment, concluding *inter alia* that even assuming King set forth prima facie claims of discrimination and

———————————————

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-11084

retaliation, DFW proffered legitimate, nondiscriminatory reasons for not reassigning, and then firing, him, which King failed to rebut with evidence of pretext. King appeals, contending that he properly substantiated these claims and also raised a separate failure-to-accommodate claim against DFW that the district court improperly dismissed without addressing. But King forfeited any failure-to-accommodate claim, and we otherwise affirm summary judgment for DFW on his other claims.

## I.

## A.

DFW hired King as a Civilian Security Officer (CSO) in February 2016. CSOs are deployed in various locations around the airport and are expected to perform certain physical tasks, including climbing into and out of vehicles; working in awkward positions such as kneeling, stooping, or squatting; sitting for extended periods; and walking for extended periods. When DFW hired King, DFW knew that he was being treated for several conditions including sciatica, herniated discs in his lower back, degenerative disc disorder, arthritis in both hips, arthritis in both knees, and flat feet. Nevertheless, King was initially able to perform his duties as a CSO without requiring any accommodations.

That changed in 2019. On November 14, 2019, King requested short-term disability leave, retroactive to November 9, through DFW's third-party administrator Matrix Absence Management, Inc. DFW's leave policy allowed a maximum of 180 calendar days of short-term disability leave within a rolling 12-month period; employees exceeding that cap were subject to termination. Matrix approved King's request, and King used 65 days of short-term disability before returning to work January 13, 2020.

When King returned to work, he did so with a set of physical restrictions that affected his duties. Those restrictions included no standing

for more than twenty minutes per hour; no repetitive bending, squatting, or stooping; no walking more than one mile per work day; and no driving more than two hours per work day. Per its modified duty policy, DFW temporarily assigned King to a CSO post at the E Dock, as the only place King could work given his restrictions. On January 28, King requested that he be moved from the E Dock to an administrative role. But DFW denied his request after determining that there had been no change in King's physical restrictions.

On April 24, 2020, King surpassed the 60-day timeframe over which DFW allowed employees to work a modified duty assignment. Because his restrictions had not changed, King again applied for short-term disability leave through Matrix. King did not return to work after April 24. On June 18, Matrix denied King's application due to inadequate medical documentation. During this time, King also began seeking reasonable accommodations from DFW for his disabilities. He submitted a formal request for accommodations on July 31.

On August 25, King met with DFW's Carl Young, Senior Human Resources Consultant; Mark Young, Senior ADA Compliance and Risk Analyst; and Barry Stevens, Senior Security Manager, to discuss King's accommodation request. Matrix Senior ADA Specialist Timm Richardson also attended the meeting. During the meeting, King requested the following accommodations:

> [Thirty] minutes out of the vehicle every two hours, no sitting to standing greater than five times per [thirty] minutes; high tables for inspection; no lifting heavy items greater than five times per hour; one hour equals [forty-five] minutes of walking, [fifteen] minutes of sitting; no standing greater than [twenty] minutes an hour; elevator and/or stairs, once per two hours.

King suggested these parameters could be met if he could work at a less busy gate or one at which another officer could periodically switch duties with him.

But Stevens explained to King that DFW could not meet his requested accommodations because CSOs were expected to work any post depending on the needs of the airport.

Though DFW denied King's requests, he was told he could apply for other jobs at the airport. But Mark Young cautioned that while King could look at positions to "see if [King] qualif[ied]," DFW "wouldn't be required to put [King] in a position just because it's open." King asked about how he should apply for jobs: "So . . . do you want me to . . . look at the careers page for DFW Airport and then send emails of possible job openings that I qualify for to Mark [Young]? Or do you want me to send it to Timm [Richardson]?" Richardson replied that King could "start the process by saying, Mark, I'm interested in this." King responded, "I can do that. I have no problem doing that . . . I'll look on the careers page. And I just need to know who . . . I need to send it to. And I'll just send it to Mark." Mark Young then affirmed: "Yeah. Sen[d] it to me."

The record substantiates at least three instances King thereafter expressed interest in possible positions. On each of those occasions, King was directed to the online portal. On August 26, the day after the meeting, King sent Mark Young an e-mail stating "I have found two positions that I am qualified for," and he attached his resume. Mark Young replied that King "need[ed] to apply for these through the normal process." Later, on November 6, King sent an e-mail inquiring about an open position to Carl Young, who responded, "I have forwarded your resume on jobs you referenced to the recruiters for the role. Each time there were stronger candidates for the role." The same day, Carl Young also told King that "[m]ost open positions . . . [were] posted internally and externally. . . . You can see any of those roles on the career page of DFW Airport and apply." Finally, on November 20, King sent a list of six positions to Carl Young and requested that he be considered. Carl Young replied: "You can apply for

4

any role that you are interested in. The job description will be included on the job posting." During this time, however, King never went beyond these email exchanges to apply for any position through the DFW application portal, though he had done so before, and did so again well after his August and November 2020 inquiries, for multiple positions.

Meanwhile, on September 21, King appealed Matrix's denial of short-term disability leave. On November 4, Matrix reversed its denial and granted King leave, retroactive to April 25, 2020. Because King had used 65 days of leave during his absence from November 2019 to January 2020, he received 115 additional days of leave pursuant to his successful appeal. That leave elapsed on August 19, 2020, after which King's absence exceeded the 180-day annual allotment provided by DFW's short-term leave policy. DFW did not learn King had exhausted his leave until after King's appeal was granted by Matrix. On December 11, 2020, DFW administratively terminated King for failing to return to work after exceeding his short-term leave.

## B.

King filed this action against DFW on October 17, 2022. He asserted disparate-treatment and retaliation claims under the ADA.[1] Specifically, he alleged that DFW discriminated and retaliated against him when it "refused to reassign" him to any of the positions for which he applied after the August 2020 meeting and when it terminated him in December 2020. Additionally, King alleged that DFW "discriminated against [him] when it refused to provide him reasonable accommodation to enable him to continue

---

[1] King also alleged a disparate treatment claim under Title VII. But it is axiomatic that "Title VII does not proscribe discrimination on the basis of disability." *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing 42 U.S.C. § 2000e-2).

performing the [CSO] position." He did not expressly allege a failure-to-accommodate claim in his complaint.

After discovery, both parties filed motions for summary judgment. In his motion, King identified two claims for relief: "a claim for disability discrimination under the [ADA]," and one for retaliation. To sustain his disability discrimination claim, King argued that DFW "violated [his] rights by not following his reasonable accommodation request." But he never clarified whether he was making a separate or distinct failure-to-accommodate claim.

In its motion, DFW addressed both King's discrimination claim and retaliation claim. DFW treated King's discrimination claim as a disparate-treatment claim, not a failure-to-accommodate claim. DFW contended that King's discrimination claim failed because King could not show that (1) he was qualified for his position, (2) there was a causal connection between his disability and any alleged adverse employment action, and (3) DFW's refusal to reassign him was an adverse employment action. Though DFW engaged King's allegation that it failed to accommodate his disabilities, it did so in the context of whether King was qualified for his position. DFW asserted King's retaliation claim lacked merit because he could not establish a causal connection between his request for accommodation and any cognizable adverse employment action. Alternatively, DFW contended that, even if King could make a prima facie case for discrimination or retaliation, DFW was still entitled to summary judgment because it had a legitimate nondiscriminatory/nonretaliatory reason for terminating King (exceeding his short-term leave), and King failed to show that DFW's reason was pretextual.

King responded to DFW's motion for summary judgment by contesting the elements of a disparate-treatment claim. Though King

discussed DFW's failure to accommodate his disabilities, he did so just as DFW had done, i.e., only in the context of whether he was qualified for his position. He nowhere asserted that he was raising a distinct failure-to-accommodate claim.

The district court granted summary judgment for DFW. The court likewise treated King's discrimination claim as a disparate-treatment claim. And as in the parties' briefing, the court addressed DFW's alleged failure to accommodate King's disability only in the context of whether King was qualified for his position. The court concluded that King's discrimination claim failed because King failed to show a causal connection between his disability and his termination. It rejected King's argument that DFW's failure to reassign him was an adverse employment action because "he never submitted any actual applications to be considered." "And even if the emails he sent . . . were treated as applications, [King] did not expound on how he was adequately qualified or how any decision to not hire him was on account of his disability and not a decision on merit." As to King's retaliation claim, the district court found that King failed to show a causal connection between his request for reasonable accommodations and his termination. The district court held in the alternative that even if King stated prima facie claims for discrimination and retaliation, he failed to show that DFW's legitimate reason for terminating him was pretextual.

King did not seek reconsideration of the district court's order or otherwise object or bring attention to the court's omission of any discussion or resolution of a distinct failure-to-accommodate claim. Rather, King filed a notice of appeal.

## II.

"We review grants of summary judgment *de novo*, applying the same standard as the district court." *In re La. Crawfish Producers*, 852 F.3d 456,

462 (5th Cir. 2017) (citing *Templet v. Hydrochem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004)). "[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We view all facts and reasonable inferences in the light most favorable to the non-moving party. *In re La. Crawfish*, 852 F.3d at 462. "We may affirm a grant of summary judgment 'based on any rationale presented to the district court for consideration and supported by facts uncontroverted in the summary judgment record.'" *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 887 (5th Cir. 2002)).

## III.

A threshold question in this appeal is what claims are properly before this court. In his opening brief, King raised two issues: (1) whether "[t]he district court erred when concluding that King failed to show that DFW discriminated against him in violation of the ADA," and (2) whether "the district court . . . erred when ruling that King failed to show DFW retaliated against him." Though King discussed DFW's purported failure to accommodate his disabilities, it was in the context of whether he was qualified for his position—just as before the district court. King also contended that DFW's failure to accommodate his disabilities constituted an adverse employment decision undergirding his disparate-treatment claim. "[O]ut of an abundance of caution," DFW treated King's assertions as articulating a separate failure-to-accommodate claim and asserted that King had waived such a claim by raising it for the first time on appeal. In his reply brief and at oral argument, King vigorously countered that he had asserted both a disparate-treatment claim *and* a failure-to-accommodate claim all along.

Accordingly, we first consider whether King preserved a failure-to-accommodate claim and conclude that he did not. Then, we discuss why the district court's summary judgment for DFW as to King's claims for disparate treatment and retaliation was correct.

## A.

"[A]lthough their methods of proof are related, 'a failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014) (internal brackets omitted) (quoting *Windhauser v. Bd. of Supervisors for La. State Univ. & Agric. & Mech. Coll.*, 360 F. App'x 562, 565 (5th Cir. 2010) (per curiam)). To establish a prima facie disparate-treatment claim, "a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *Id.* at 697 (alteration in original) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). On the other hand, to state a failure-to-accommodate claim, a plaintiff must show "(1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal quotations omitted). In general, "[a] failure-to-accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question *has not* suffered [an] adverse employment action." *LHC Grp.*, 773 F.3d at 703 n.6 (citing *Bridges v. Dep't of Soc. Servs.*, 254 F.3d 71, 71 (5th Cir. 2001) (unpublished)). Despite these distinctions, an employer's failure to accommodate an employee's disability can still be relevant to a disparate treatment claim. *See id.* Specifically, the question of whether an employer could reasonably accommodate an employee is pertinent to whether a plaintiff was qualified for a position. *Id.*

Mindful of these well-hewn principles, the record demonstrates that King forfeited any failure-to-accommodate claim by not raising it in the district court. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). As discussed, King did not expressly allege a failure-to-accommodate claim in his complaint. While he asserted that DFW "discriminated against [him] when it refused to provide him reasonable accommodation[s]," that allegation was in the broader context of his disparate-treatment claim. Beyond that, at summary judgment, King never contended that he was asserting a separate failure-to-accommodate claim, and he never addressed the elements of such a claim in his motion or briefing on either his or DFW's motion. While DFW and King debated whether DFW could have reasonably accommodated him in his CSO position, that debate centered on whether King was qualified for his position—i.e., to support an element of his disparate-treatment claim. Tellingly, the district court followed the parties' framing of the issues, only addressing King's failure-to-accommodate argument within its analysis of King's disparate-treatment claim. And as tellingly, King did not object to the district court's order or otherwise call attention to the court's apparent failure to consider a distinct failure-to-accommodate claim before he filed his notice of appeal.

Thus, King had multiple opportunities to clarify that he was asserting a failure-to-accommodate claim. He never did so. And he cannot now confect a new claim against DFW that was at best implied in his complaint, and only impliedly addressed by either the parties or the district court at summary judgment.[2]

---

[2] Of course, had the district court left a standalone failure-to-accommodate claim unresolved (without severing it under Federal Rule of Civil Procedure 21), this court would lack appellate jurisdiction over King's appeal. "Under 28 U.S.C. § 1291, we have jurisdiction only over 'final' decisions." *Cooper v. Brown*, 844 F.3d 517, 526 (5th Cir. 2016).

No. 23-11084

Even if King had asserted a failure-to-accommodate claim in the district court, he abandoned it by failing adequately to brief it on appeal. *See Rollins*, 8 F.4th at 397; *LHC Grp.*, 773 F.3d at 703. Though King "discussed whether or not reasonable accommodations were available to [DFW], [he] did not specify that this line of inquiry pertained to [his] failure-to-accommodate claim rather than to the second prong of the discriminatory-discharge action." *LHC Grp.*, 773 F.3d at 703. He did not so much as identify a distinct failure-to-accommodate claim as an issue on appeal. *See id.* Belatedly, in his reply brief, King argued that he has raised a distinct failure-to-accommodate claim, but that is not enough. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in [his] *initial* brief on appeal."). King essentially conflates *arguments* that he made to support his claim for disparate treatment with a *claim* for failure to accommodate that he nowhere briefs. But he cannot conjure such a claim by bootstrapping unrelated arguments pertaining to elements of a different claim. So even if King had preserved his failure-to-accommodate claim in the district court, he did not do so on appeal.[3]

## B.

That leaves King's claims for disparate treatment and retaliation. Because King does not present direct evidence of discrimination or retaliation, we apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for both claims. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (applying *McDonnell-*

---

[3] Nor does King's failure to preserve a distinct accommodation claim present the kind of "purely legal matter" that this court has said can be an exception to the rule of issue forfeiture. *Rollins*, 8 F.4th at 398 (quoting *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 453 (5th Cir. 2008)). King simply did not articulate or litigate, from his complaint forward, a distinct claim that DFW failed to accommodate his disability.

*Douglas* in the ADA retaliation context); *Caldwell v. KHOU-TV*, 850 F.3d 237, 241–42 (5th Cir. 2017) (applying *McDonnell-Douglas* in the ADA discrimination context). Under that framework, a plaintiff must first establish a prima facie case of discrimination or retaliation. *See Lyons*, 964 F.3d at 304. The burden then shifts to the employer to "come forward with a legitimate, nondiscriminatory [or nonretaliatory] reason for its action." *Id.* "If the employer meets its burden of production, the employee must then demonstrate that the proffered reason is a pretext for retaliation [or discrimination]." *Id.* For the employee to meet the burden, he must "produce evidence from which a jury could conclude that [the employer's] articulated reason is pretextual." *Nall v. BNSF Railway Co.*, 917 F.3d 335, 342 (5th Cir. 2019).

Assuming *arguendo* King substantiates a prima facie case for his discrimination and retaliation claims, DFW proffers at least two legitimate nondiscriminatory/nonretaliatory reasons for refusing to reassign King and for terminating him. As to DFW's refusal to reassign him, DFW contends that King was not qualified for any open and available positions. And as to his termination, DFW asserts that King was administratively terminated because he did not return to work after exceeding the 180-day limit for short-term leave.

Rather than address these arguments head on, King responds that, as to reassignment, DFW never attempted to offer a legitimate, nondiscriminatory reason and thus "ignored its burden." And King points out that he applied for reassignment through Mark Young and Carl Young, as instructed at the August 25, 2020 meeting, yet was rebuffed. He emphasizes that the district court improperly rested its decision on the fact that King did not apply through DFW's online portal. King also asserts that he lacked access to DFW's internal portal while on leave.

Yet King's interpretation of the August meeting is unsupported by the record.  King was never promised that he could entirely bypass the usual job application process.  Rather, King was merely told he could "start the process" of reassignment by emailing Mark Young.  Crucially, both Mark Young and Carl Young redirected King to the online portal on several occasions after the meeting.  Despite the repeated instruction, King chose not to follow the standard procedure, and as the district court noted, King "made no efforts to communicate with DFW that he lacked access [to the portal] in order to submit applications."  Further, King's insistence that he lacked the means to apply through the traditional method is belied by the numerous job applications King submitted via DFW's online portal before and after the timeframe relevant here.

All that to the side, King's claims also fail because he offers no evidence, beyond his own conclusory allegations, that DFW's stated reasons for declining to reassign him and ultimately terminating him were not legitimate and nondiscriminatory.  *See Lyons*, 964 F.3d at 304.  DFW avers that it did not reassign him because he was not qualified for any open position.  And DFW terminated him because he failed to return to work after he exhausted his leave.  Our case law is clear that King bears the burden of presenting evidence from which a reasonable jury could decide DFW's stated reasons were pretextual.  *E.g.*, *Nall*, 917 F.3d at 342.  Yet King points to no evidence on either point that would permit a reasonable jury to reach such a conclusion.  Rather, King's position relies only on evidence that he applied for open jobs, which says nothing of DFW's response that he was not qualified, and an unsupported theory that DFW allowed him to exhaust his leave and then used that as pretext to terminate him because of his disability.  Absent evidentiary support for his claims, King fails to meet his burden to sustain them.  Thus, his claims were properly dismissed.

\* \* \*

No. 23-11084

King did not preserve a failure-to-accommodate claim in the district court, and thus may not assert it for the first time on appeal. Moreover, King fails to rebut DFW's legitimate, nondiscriminatory reasons for not reassigning King and later terminating him. Therefore, the district court's summary judgment is

AFFIRMED.